UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

THOMAS GREEN,
and SHALEANA CISTRUNK,

                        Plaintiffs,

            v.                                    Case No. 21-cv-615-pp

JON NOBLE, *et al.*,

                        Defendants.

## ORDER SCREENING AMENDED COMPLAINT (DKT. NO. 8) UNDER 28 U.S.C. §1915A, DENYING PLAINTIFF GREEN'S MOTION FOR A PRELIMINARY INJUNCTION (DKT. NO. 2) AND DISMISSING CASE

On May 17, 2021, plaintiff Thomas Green, an incarcerated person at Kettle Moraine Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his First and Fourteenth Amendment rights by prohibiting his girlfriend from visiting him in prison. Green paid the full $402 civil filing fee with his complaint. Dkt. No. 1.

On November 29, 2021, the court received a letter from Green, in which he asked "to amend the complaint before screening since it hasn't been screened yet." Dkt. No. 7. Green did not wait for the court's response; the court received an amended complaint two months later. Dkt. No. 8. The amended complaint added several defendants and a second plaintiff, Shaleana Cistrunk (Green's girlfriend). Because Cistrunk is not incarcerated and Green paid the full filing fee, Cistrunk does not need to pay an additional filing fee to join this lawsuit. See Hietpas v. Buhs, No. 17-CV-1455, 2017 WL 5905557, at *1 (E.D.

Wis. Nov. 30, 2017) (citing <u>Boriboune v. Berge</u>, 391 F.3d 852, 855 (7th Cir. 2004)).

Under Federal Rule of Civil Procedure 15, "[a] party may amend its pleading once as a matter of course within" twenty-one days of service or within twenty-one days after service of a responsive pleading. Fed. R. Civ. P. 15(a)(1). Because the plaintiffs filed the amended complaint within the period that Rule 15(a)(1) defines, and because the court has not yet screened the original complaint or ordered service on any defendant, the court will screen the amended complaint. Dkt. No. 8. The amended complaint supersedes the original complaint and now is the operative complaint. <u>See Massey v. Helman</u>, 196 F.3d 727, 735 (7th Cir. 1999) (citing <u>Carver v. Condie</u>, 169 F.3d 469, 472 (7th Cir. 1999)). That means the court will not consider allegations in the original complaint when screening the amended complaint. This decision also resolves plaintiff Green's motion for a preliminary injunction. Dkt. No. 2.

## I.  Screening the Complaint

### A.  Federal Screening Standard

The amended complaint contains claims filed by a prisoner (Green) and by a non-prisoner (Cistrunk). The court has "'the power to screen complaints filed by all litigants, prisoners and non-prisoners alike, regardless of fee status.'" <u>Richards v. HSBC Tech. & Servs. USA, Inc.</u>, 303 F. App'x 356, 357 (7th Cir. 2008) (quoting <u>Rowe v. Shake</u>, 196 F.3d 778, 783 (7th Cir. 1999)).

The Prison Litigation Reform Act (PLRA) applies to Green's claims because he was a prisoner when he filed the amended complaint. <u>See</u> 28 U.S.C. §1915(h). Under the PLRA, the court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a

defendant who is immune from such relief. 28 U.S.C. §1915A(b). The same standards apply to screening Cistrunk's claims, even though she is not a prisoner. See 28 U.S.C. §1915(e)(2).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Fed. R. Civ. P. 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him or her of a right secured by the Constitution or the laws of the United States, and that whoever deprived him or her of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court liberally construes complaints filed by plaintiffs who are representing themselves (whether they are a prisoner or non-prisoner) and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.     The Plaintiffs' Allegations

The plaintiffs have sued defendants who work at Kettle Moraine and Fox Lake Correctional Institutions, as well as employees of the Wisconsin Division of Adult Institutions (DAI) and the Wisconsin Department of Corrections (DOC). Dkt. No. 8 at ¶¶5–8. The amended complaint names Kettle Moraine Warden Jon Noble, Kettle Moraine Deputy Warden Gierach, Fox Lake Captains Schueler and Congdon, DAI Security Chief Larry Fuchs, Kettle Moraine Records Officer A. Salas and DAI Administrator Sarah Cooper. Id. at ¶¶5–8, 36. The plaintiffs have sued the defendants in their individual and official capacities. Id. at ¶9.

The plaintiffs allege they have been a couple since they were teenagers, and that Cistrunk has visited Green while he has been in and out of prison since 1993. Id. at ¶11. In October 2016, Green was transferred to Fox Lake, so Cistrunk began visiting him there. Id. at ¶12. She would occasionally bring Green's family members, including his mother. Id. On December 20, 2018, Cistrunk had a contact visit with Green at Fox Lake, pursuant to DOC rules. Id. at ¶13. Two weeks later, on January 4, 2019, Green was placed on temporary lockup status at Fox Lake pending an investigation for "unauthorized transfer of property." Id. Green states he was given no additional reason for being placed on temporary lockup; he alleges that Wisconsin Administrative Code DOC §303.10 requires staff to document the reasons for TLU placement and notify the incarcerated person of those reasons. Id. at ¶¶13-14.

On January 17, 2019, Captain Schueler issued Green a conduct report charging him with unauthorized transfer of property and "a trumped up charge" of possession of intoxicants. Id. at ¶15. The conduct report explained

4

that Schueler had been conducting investigations of intoxicants being introduced into the prison. Id. Schueler said he had information that Cistrunk was bringing drugs during contact visits and giving the drugs to the visitor's bathroom janitor, who would deliver the drugs to Green. Id. The report notes that Schueler searched the visiting room women's bathroom the morning after Cistrunk's December 20, 2018 visit, before any inmates had access to it, and located "a golf ball size yellow balloon concealed in the hand rail" of the toilet stall area. Id. The balloon contained "two baggies" of "a green leafy substance that tested positive for THC." Id. Schueler removed the baggies but replaced the balloon. Id. Inmate David McAlister was the visiting bathroom janitor on December 21, 2018. Id. Prison staff searched McAlister that morning after he cleaned the bathroom and found "the golf ball size yellow package" on his person. Id.

The conduct report also described several phone calls between Green and Cistrunk during which Green instructed Cistrunk to pick up money. Id. Cistrunk, often under the name "Karen," also spoke with another inmate about "do[ing] a western union for '3.'" Id. Cistrunk later told Green she could not "keep running there every other day, they got ID's, Camera's [*sic*]." Id. Green was reported as telling his daughter on another phone call that he would "try an[d] do like a 'glove' for you for him and then after that we'll double back." Id. Green later instructed Cistrunk that his "guy said to take your time because last time, I guess you didn't close . . . what's his name . . . all the way.'" Id. During another call, Cistrunk asked Green, "was it ripe?", to which Green said, "I didn't get it, I gotta wait until tomorrow man cause ah I gotta wait until tomorrow man, it's cool though, he say you did good too this time, he checked it." Id.

Schueler interviewed Green, who denied he was having anyone pick up money or money orders and claimed that the numbers he was giving Cistrunk were "lottery numbers." Id. He later admitted that other incarcerated persons were having their family or friends send him money orders, but he claimed they were for gambling. Id. Green denied having anyone introduce intoxicants into the prison, but he was unable to provide an alternate explanation for the terms and language he used on the recorded phone calls. Id.

On January 18, 2019, the prison held a hearing for the conduct report, during which Green provided a statement that Captain Congdon transcribed. Id. at ¶16. Green admitted guilt to the charge for unauthorized transfer of property but denied guilt for introducing intoxicants into the prison. Id. He stated that Cistrunk "never brought any THC that inmate McAlister was caught with." Id. He reiterated that other inmates were sending his family and friends money orders for gambling. Id. Congdon, who served as the hearing officer, found Green guilty of both charges and sentenced him to 240 days' disciplinary separation. Id. at ¶17. The plaintiffs allege that Fox Lake staff never removed Cistrunk from Green's visitor list. Id. at ¶18. Cistrunk never faced criminal charges related to her visit with Green, and local law enforcement never contacted or questioned her about the information in Green's conduct report. Id.

In April 2019, Green was transferred to Green Bay Correctional Institution. Id. at ¶19. Green Bay Security Director John Kind (who is not a defendant) gave Green a memorandum suspending Green's contact visits because of his disciplinary convictions. Id. Green Bay allowed Green only two one-hour, no-contact visits per week. Id. The memorandum advised that Green's "regular visiting privileges will resume October 30, 2019." Id.

On December 12, 2019, DAI Security Chief Fuchs sent Cistrunk a letter notifying her that her visitation privileges were suspended for one year at all DOC institutions because of the belief that she had been involved in the conduct underlying Green's disciplinary convictions. Id. at ¶20. The letter informed Cistrunk that she could appeal the decision and that she "may reapply for visitation privileges after December 5, 2020." Id. Cistrunk notified DAI Administrator Cooper about Fuchs's letter and explained that she was "very upset that WIDOC had banned her on a blatant lie." Id. at ¶21. Cistrunk contested Fox Lake's investigation, complaining that at least thirty women had used the bathroom where officials found the drugs. Id. She claimed that prison officials had not questioned any of those women, had not reviewed camera footage from that day and had not tested the balloon for fingerprints. Id. Cistrunk's sister later found Fuchs's letter to Cistrunk and informed their other sister and their mother about its contents. Id. Cistrunk claims she had to seek counselling after "her own sister perpetuated the false letter and rumors by WIDOC." Id. She claimed to have been "re dramatized [*sic*], stressed, depressed and emotionally impacted all over again." Id.

Green and Cistrunk attempted to resume their visits in January 2021, while Green was at Green Bay, by requesting that Cistrunk be restored to Green's visitor list. Id. at ¶22. On March 4, 2021, social worker Cleary (who is not a defendant) denied Cistrunk's request to visit because of the investigation at Fox Lake and Green's disciplinary convictions. Id. at ¶23. Cleary concluded that "[t]here are reasonable grounds to believe" Cistrunk had "attempted to bring contraband into any penal facility, or that visitor otherwise poses a threat to the safety and security of visitors, staff, offenders or the facility." Id. A week later, Supervisor S. Cummings (who is not a defendant) overruled Cleary's

recommendation and approved Cistrunk for virtual visits with Green via Zoom. Id. at ¶24. On March 24, 2021, Green was transferred to Kettle Moraine. Id. at ¶25. A week later, he had a thirty-minute Zoom visit with Cistrunk, which they attended using a laptop or cell phone. Id. The plaintiffs had another Zoom visit scheduled for April 6, 2021, but all Zoom visits at Kettle Moraine that day were cancelled because of technical difficulties. Id. at ¶26.

On April 27, 2021, Salas sent the plaintiffs a notice on behalf of Warden Noble removing Cistrunk from Green's visitor list. Id. at ¶27. The warden reasoned, as had Cleary, that there was reasonable cause to believe Cistrunk had attempted to bring contraband into a DOC facility or that she posed a threat to the safety of the institution and its visitors, staff and inmates. Id. The warden allowed Cistrunk and Green an opportunity to appeal the decision or, if they did not appeal, allowed Green an opportunity to petition for restoration of Cistrunk to his visitor list in six months. Id. The next day, Green wrote to Noble and explained Cistrunk's removal and restoration to his visitor list at Green Bay. Id. at ¶28. He asked for further explanation for why she had been removed from his visitor list at Kettle Moraine. Id. On April 29, 2021, Noble responded and instructed Green to "file an ICE [grievance] for denial of proposed visitor and include her first name." Id. at ¶29. The plaintiffs describe Noble's decision as "seemingly arbitrary in nature." Id. at ¶30.

On April 31, 2021, Green filed a grievance about Cistrunk being removed from his visitor list. Id. at ¶31. He explained Cistrunk's history of being allowed to visit him, her removal from his visitor list, his and Cistrunk's unsuccessful appeals of her removal and her eventual reinstatement to his visitor list in March 2021, while he was at Green Bay. Id. Green alleged in his grievance, "There has been no conduct to remove her again as [he had] already received

punishment for the conduct in 2019 at [Fox Lake] and served at [Green Bay]."
Id. Green claimed the situation was "a case of double jeopardy" and requested
that Cistrunk be placed back on his visitor list. Id.

The amended complaint alleges that on May 5, 2021, institutional
complaint examiner K. Schmidt (who is not a defendant) and "the reviewing
authority (warden)" responded to Green's grievance. Id. at ¶32. The plaintiffs
allege that the response contained "false information and statements in their
decision to justify their arbitrary actions." Id. Schmidt's response noted that
there was no way to make a notation in the complaint system allowing
Cistrunk to be approved for "zoom visit only." Id. Schmidt explained that she
had spoken with Deputy Warden Gierach, who had determined that Cistrunk
should be removed from Green's visitor list because of her conduct related to
Green's disciplinary convictions and because they could not approve her for
only non-contact, virtual Zoom visits. Id. Schmidt recommended that the
reviewing authority dismiss Green's complaint. Id.

Green appealed five days later, alleging that Schmidt "admits that she
conspired and retaliated with Noble, Gierach, Pollard, Salas and Clarey [*sic*]
and had Ms. Cistrunk removed off of [his] visit list based on retaliation and
hate." Id. at ¶33. On May 24, 2021, corrections complaint examiner Brad
Hompe (who is not a defendant) recommended dismissing Green's appeal. Id. at
¶34. Hompe explained it was "error" for Cistrunk to be on Green's visitor list
and that Kettle Moraine "corrected" the error "by removing the visitor
[Cistrunk] from the approved list. Id. Hompe added that the reasons for the
denial were "outlined in the record and is in accordance with code and within
the warden's discretion." Id. Four days later, DOC Secretary Cindy O'Donnell

9

(who is not a defendant) accepted Hompe's recommendation and dismissed Green's appeal. Id.

The plaintiffs allege that they further attempted to reinstate Cistrunk to Green's visitor list but were unsuccessful. Id. at ¶35. They claim the defendants "knew Cistrunk would never be allowed to see Green in prison again." Id. In November 2021, Green wrote to corrections program supervisor Lemke (who is not a defendant) asking for help reinstating Cistrunk onto Green's visitor list. Id. Green told Lemke that Cistrunk "has been denied again 11-5-21 for [Green's] conduct report in [Fox Lake] in 2018." Id. On November 19, 2021, Lemke responded that it was unlikely Cistrunk would be allowed back on his visitor list "based on previous concerns." Id. (capitalization omitted). Cistrunk again contacted DAI administrator Cooper, but Cooper told Cistrunk she would agree "with whatever the warden is going with." Id.

The plaintiffs assert that Captains Schueler and Congdon violated their First Amendment right to associate with each other by writing and upholding a "fabricated conduct report." Id. at ¶37. They assert that the defendants violated Cistrunk's "right to be free from Libel under State and Federal law and constitution." Id. at ¶38. They also assert that Schueler violated Green's "freedom of speech when he wrote a retaliatory conduct report" and by "unreasonably interpreting phone call conversations that has nothing to do with drugs" to fit a DOC rule violation. Id. at ¶39. The plaintiffs assert that Noble and Gierach violated their right to associate by arbitrarily removing Cistrunk from Green's visitor list and falsely claiming they could not approve her for Zoom visits only. Id. at ¶40. Finally, the plaintiffs claim the defendants violated their "due process rights by creating a meaningless appeal process that they knew was meaningless." Id. at ¶41. They assert the defendants knew

Cistrunk would never be added back to Green's visitor list yet forced the plaintiffs to appeal the decision to remove her from his list. Id.

The plaintiffs seek compensatory and punitive damages, judgment declaring that the defendants violated the plaintiffs' First and Fourteenth Amendment rights and committed libel against Cistrunk and injunctive relief reinstating Cistrunk onto Green's visitor list. Id. at 11–12.

C. Analysis

Federal Rule of Civil Procedure 20 allows multiple persons to "join in one action as plaintiffs if they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A)–(B). The court finds that the plaintiffs' proposed claims arise out of the same events and involve common questions of law and fact. Rule 20 therefore permits the joinder of Cistrunk to this lawsuit.

The plaintiffs have sued the defendants in their individual and official capacities. The court first will address the claims against the defendants in their individual capacities.

1. Individual Capacity

a. Right to Associate

The plaintiffs assert that the defendants' actions in prohibiting Cistrunk from visiting Green in prison violated their right to associate with each other. The plaintiffs are correct that they have a right "'to enter into and maintain certain intimate human relationships.'" Bilka v. Farrey, 447 F. App'x 742, 744 (7th Cir. 2011) (quoting Roberts v. U.S. Jaycees, 468 U.S. 609, 617–18 (1984)). But the U.S. Court of Appeals for the Seventh Circuit never has "recognized

that this right extends to someone who wants to visit a non-relative in prison," including romantic partners like Cistrunk. Id.; see Martin v. Snyder, 329 F.3d 919, 921 (7th Cir. 2003) (affirming district court's judgment concluding that prisoner's fiancée "ha[d] no independent right to visit prisoners"). Nor has the Seventh Circuit recognized a constitutional right of incarcerated persons like Green to receive visits from romantic partners. See Nigl v. Litscher, No. 17-CV-925-JPS, 2018 WL 1175165, at *3 (E.D. Wis. Mar. 6, 2018) (citing Cherry v. McCaughtry, 49 F. App'x 78, 2002 WL 31408905, at *1 (7th Cir. 2002); and Billups v. Galassi, 202 F.3d 272, 2000 WL 6200, at *1 (7th Cir. 2000)) ("[T]he Due Process Clause does not independently protect an inmate's access to a particular visitor, including a girlfriend or fiancée."). The Seventh Circuit also has noted that it "is an open question" whether incarcerated persons have a constitutional right to visits with family members, such as granddaughters. Hohol v. Jess, 394 F. App'x 318, 319 (7th Cir. 2010) (citing Overton v. Bazzetta, 539 U.S. 126, 131–32 (2003), and cases from other circuits).

Even assuming for the purpose of screening that Green has a right to visits from Cistrunk, the prison may reasonably restrict those visits "to serve the legitimate penological concerns of the prison." Bilka, 447 F. App'x at 744 (citing Thornburgh v. Abbott, 490 U.S. 401, 407–08 (1989); and Turner v. Safley, 482 U.S. 78, 89 (1987)). The amended complaint alleges that Green Bay officials initially prohibited Cistrunk from visiting Green because of the investigation at Fox Lake, which concluded that Cistrunk brought contraband into the prison. Officials at Kettle Moraine gave the same reasoning for not allowing Cistrunk to visit Green at that prison in April 2021. Restricting in-person visits from someone the prison had reason to believe brought drugs into the prison is a rational means of fulfilling a legitimate penological interest. See

id. (citing cases) ("The prison has a legitimate interest in maintaining security, and prohibiting contact between prisoners and former employees who have smuggled contraband to those prisoners rationally furthers that interest."). Although the plaintiffs were not allowed contact or virtual visits, that does not mean they could not still maintain their relationship "through contact other than visitation." Id. (citing Overton, 539 U.S. at 135). There are no allegations that the plaintiffs were prohibited from having phone calls, exchanging letters or otherwise keeping in touch. That the defendants did not allow Cistrunk to visit Green did not violate the plaintiffs' constitutional rights. The amended complaint fails to state a claim for denial of the plaintiffs' right to intimate association.

> b.    Retaliation

Green next asserts that Schueler violated his rights under the First Amendment by writing "a retaliatory conduct report" against him and "unreasonably interpreting phone call conversations" between him and Cistrunk. Dkt. No. 8 at ¶39. He alleges that the defendants removed Cistrunk from his visitor list "based on retaliation and hate." Id. at ¶33. The court analyzes claims of retaliation under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, Green must allege that "he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." Felton v. Huibregtse, 525 F. App'x 484, 486 (7th Cir. 2013) (citing Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010); and Bridges, 557 F.3d at 546).

Green has not stated a claim of retaliation. He alleges that Schueler retaliated against him by writing a false conduct report that misinterpreted

phone calls between him and Cistrunk. He also alleges that all the defendants retaliated against him by removing Cistrunk from his visitor list. But Green does not say what the defendants retaliated against him *for*. He does not allege that he engaged in a protected activity that prompted Schueler to write the conduct report or that prison officials removed Cistrunk from his visitor list because he engaged in activity protected by the First Amendment. Green instead says that Schueler denied him visits from Cistrunk and wrote a conduct report based on Schueler's investigation and belief that Cistrunk brought drugs into the prison during her visits. That conduct, corroborated by recorded phone calls between Cistrunk and Green, formed the basis of the disciplinary charges in Schueler's conduct report. Green pleaded guilty to one of those charges and was found guilty of the other after a hearing. Cistrunk's alleged conduct, and Greens' disciplinary convictions, provided the basis for prison officials (at three prisons) to remove Cistrunk from Green's visitor list— not Green's engaging in activity protected by the First Amendment.

The protected conduct that forms the basis of a retaliation claim typically is some form of speech, such as filing a grievance or lawsuit or complaining about prison conditions. See, *e.g.*, Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020) (lawsuits); Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (complaints and grievances). The conduct that led to Green's disciplinary charges and convictions cannot be the basis for a claim of retaliation. Violating prison rules is a *prohibited* activity, not a protected one. Green also filed a grievance against Kettle Moraine officials who removed Cistrunk from his visitor list. But that grievance cannot be the basis for his retaliation claim because he filed it *after* the officials denied him visits with Cistrunk.

The amended complaint alleges no facts showing that Green engaged in a protected activity. Nor does it allege that Schueler wrote the conduct report in retaliation for Green's protected conduct or that prison officials removed Cistrunk from Green's visitor list in retaliation for such protected activity. The amended complaint instead explains that prison officials took disciplinary action against Green because they had reason to believe he violated prison rules by having Cistrunk bring drugs into the prison. Green's insistence that the defendants' actions were retaliatory is based on conclusory statements that have no factual support. Conclusory or speculative allegations are not entitled to the presumption of truth and are insufficient to state a claim under §1983. See Hanks v. Hubbard, No. 21-2504, 2022 WL 356732, at *3 (7th Cir. Feb. 7, 2022) (citing Twombly, 550 U.S. at 554–56). The amended complaint fails to state a claim of retaliation.

c.   Due Process

The plaintiffs next allege that the defendants created a "meaningless" appeal process to allow Green to petition for Cistrunk's return to his visitor list. Dkt. No. 8 at ¶41. They allege the appeal process was, in effect, a sham because "the same defendants who removed Cistrunk in the first place" would review any appeal of Cistrunk's removal from Green's visitor list. Id. The plaintiffs assert that the defendants "knew full well they would never place Shaleana Cistrunk back on Green's list." Id.

As discussed above, Green does not have a right to have Cistrunk on his visitor list, and the prisons had a legitimate interest in denying his requests to add her back onto his list. See Bilka, 447 F. App'x at 744 (citing Overton, 539 U.S. at 132) (noting that courts must afford "substantial deference to the prison's professional judgment"). Because the defendants' actions did not

deprive Green of a protected interest in visits from Cistrunk, they did not owe him any process before prohibiting her from visiting. <u>See</u> <u>Isby v. Brown</u>, 856 F.3d 508, 524 (7th Cir. 2017) (explaining that a prisoner is due process only when a prison restriction deprives him of a protected liberty or property interest). That means the defendants were not obligated to provide Green a meaningful appeal process for restoring Cistrunk to his visitor list.

Even if Green was owed more process after Cistrunk was removed from his list, the amended complaint shows that he received the process he was due. Green says that after Kettle Moraine officials removed Cistrunk from his visitor list in April 2021, officials told him he could resubmit a proposed visitor's name for reconsideration in six months. Dkt. No. 8 at ¶27. Green followed that process and sometime around November 2021, asked that Cistrunk be added to his list. <u>Id.</u> at ¶35. On November 5, 2021, the prison denied Green's request. Green also filed a grievance about the prison removing Cistrunk from his visitor list. The prison responded and denied his request. He appealed that decision, but the prison upheld it. These allegations show that prison afforded Green all the process he was due after Cistrunk was removed from his visitor list. Green's dissatisfaction with the outcome of his appeal or the prison's grievance process does not constitute a due process violation. <u>See</u> <u>Owens v. Hinsley</u>, 635 F.3d 950, 953 (7th Cir. 2011) (explaining that "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause"); <u>Steinke v. Dittmann</u>, No. 17-CV-656-PP, 2020 WL 470145, at *3 (E.D. Wis. Jan. 29, 2020) (quoting <u>Reimann v. Frank</u>, 397 F. Supp. 2d 1059, 1081 (W.D. Wis. 2005)) ("'[T]he due process clause does not require states to provide meaningful review of prisoner complaints.'").

Nor does Cistrunk state a due process claim because she has no protected liberty or property interest in contact or virtual visits with Green while he is in prison. That means she was not due any process before prison officials prohibited her from visiting him. See Bilka v. Farrey, No. 11-C-0430, 2011 WL 2444045, at *2 (E.D. Wis. June 15, 2011) (citing Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)) ("It is clear that the Due Process Clause itself does not give rise to a liberty interest in visitation privileges."), aff'd, 447 F. App'x 742 (7th Cir. 2011).

The amended complaint does not assert that Cistrunk suffered damage to her reputation from being denied visits with Green at the prison, which could form the basis of a claim under the due process clause. See Brown v. City of Michigan City, Ind., 462 F.3d 720, 729 (7th Cir. 2006) (citing Paul v. Davis, 424 U.S. 693 (1976)). The amended complaint alleges only that Cistrunk's reputation has been injured, which does not state a due process claim. See Katz-Crank v. Haskett, 843 F.3d 641, 650 (7th Cir. 2016) (quoting Paul, 424 U.S. at 701, 712). Cistrunk could have a due process claim related to the alleged damage to her reputation only if she also suffered "the 'alteration of a legal status,' such as the government deprivation of a right securely held." Brown, 462 F.3d at 730 (quoting Paul, 424 U.S. at 708–09). The amended complaint does not suggest that Cistrunk suffered the deprivation of a right or alteration of legal status from being denied visits with Green. To the contrary, the amended complaint alleges that Cistrunk never faced criminal charges and suffered no adverse consequences from the allegedly false information in Green's conduct report. Dkt. No. 8 at ¶18. That means she cannot state a due process claim for damage to her reputation. Because Cistrunk has no protected interest in visiting Green at the prison, and because she suffered no

deprivation of her rights or change in her legal status when the prison denied those visits, she has no basis for a due process claim against prison officials.

d.    Libel and Other State Law Claims

The plaintiffs assert that the defendants libeled Cistrunk in violation of state and federal law. A claim of "libel" is a sub-species of defamation, which occurs when a person lies about someone and causes them harm as a result. Lynch v. Holder, No. 19-CV-1601-PP, 2020 WL 998542, at *3 (E.D. Wis. Feb. 28, 2020). A person commits libel when he or she lies about another person in writing. Id. Claims of defamation, including claims of libel, "are *state-law* claims." Id. (emphasis in original). The Constitution does not forbid libel, and no species of defamation deprives a person of her liberty protected under the Due Process Clause. Edwards v. Strahota, No. 15-CV-845-PP, 2016 WL 614697, at *6 (E.D. Wis. Feb. 16, 2016) (quoting Smith v. City of Chi., 992 F. Supp. 1027, 1030 (N.D. Ill. 1998), and citing Davis v. City of Chi., 53 F.3d 801, 804 (7th Cir. 1995)). That means a Wisconsin resident (like Cistrunk) who wants to sue another Wisconsin resident (like the various defendants) for lying about her "may do so in *state* court, but not in *federal* court." Lynch, 2020 WL 998542, at *3 (emphasis in original).

To the extent that Green seeks to proceed on a claim that the defendants' actions violated a prison policy, he may not do so. Section 1983 "protects against 'constitutional violations, not violations of . . . departmental regulation[s] and . . . practices.'" Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) (quoting Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003)). Likewise, §1983 does not protect against the defendants' alleged violations of the Wisconsin administrative code in the handling of Green's

disciplinary process or appeal. See Staples v. Casperson, 6 F. App'x 481, 483 (7th Cir. 2001) (citing Hamlin v. Vaudenberg, 95 F.3d 580, 583 (7th Cir. 1996)).

In certain circumstances, a federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. §1367(a). But the amended complaint does not state a basis for relief under federal law. The court declines to exercise supplemental jurisdiction over any claims arising under state law and dismisses those claims without prejudice. See 28 U.S.C. §1367(c)(3).

### 2. Official Capacity

Claims against a prison official in his or her official capacity represent another way to bring claims against the entity that he or she represents or for which he or she works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The plaintiffs allege that the defendants work at various DOC institutions, for the DOC itself or for the DAI. Because the DOC and DAI are departments of the State of Wisconsin, and claims against a state department are "no different from a suit against the State itself," the court will construe the official capacity claims as if the plaintiffs brought them against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. That means the plaintiffs may not proceed against the defendants in their official capacities to recover damages. See Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535

U.S. 613, 617 (2002) (citing <u>Will</u>, 491 U.S. at 66); <u>Williams v. Wisconsin</u>, 336 F.3d 576, 580 (7th Cir. 2003).

The plaintiffs also seek declaratory judgment and injunctive relief. Unlike monetary damages, the plaintiffs may proceed against state officials sued in their official capacities for declaratory or injunctive relief, <u>see Will</u>, 491 U.S. at 71 n.10 (citing <u>Graham</u>, 473 U.S. at 167 n.14 (1985), and <u>Ex Parte Young</u>, 209 U.S. 123, 159–60 (1908)), but only if the relief sought is *prospective*—that is, if they seek relief from *future* harm. <u>Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 146 (1993). The plaintiffs may not use §1983 to obtain a judgment against the defendants in their official capacities "declaring that they violated federal law in the past." <u>Id.</u>

The plaintiffs seek a judgment declaring that the defendants violated their First and Fourteenth Amendment rights and libeled Cistrunk. Some of these alleged violations are ongoing because Cistrunk has not been restored to Green's visitor list. The plaintiffs seek prospective injunctive relief ordering the defendants to return Cistrunk to that list. Although the plaintiffs are not barred from seeking this relief, the court concludes that the amended complaint fails to state a claim for relief. That means the plaintiffs may not proceed on any claim against the defendants in their individual or official capacities for any relief, including injunctive or declaratory relief.

            3.    *Amended Complaint*

Ordinarily, district courts permit civil plaintiffs at least one opportunity to amend a pleading that fails to state a claim for relief. But here, the plaintiffs already have amended their pleading once. The amended complaint describes the same events as the original complaint but does so in much more detail. The original complaint was four pages long and contained only sixteen handwritten

paragraphs of allegations. Dkt. No. 1. The amended complaint is twelve pages long—three times the length of the original complaint—and contains forty-one typed paragraphs of allegations, some of which span multiple pages. Dkt. No. 8. The amended complaint adds several new defendants, adds Cistrunk as plaintiff and clarifies the plaintiffs' claims for relief.

Allowing the plaintiffs to further amend the complaint would not cure the deficiencies described in this order. The events complained of simply do not provide a basis for any constitutional claim and would not with more information. Cistrunk may bring a libel claim in state court but not in federal court. Because the court concludes that further amendment would be futile, the court will not give the plaintiffs an opportunity to file a second amended complaint. See Boyd v. Bellin, 835 F. App'x 886, 889 (7th Cir. Feb. 10, 2021) (explaining that a district court need not provide leave to amend where the amendment would be futile).

## II.    Motion for Preliminary Injunction (Dkt. No. 2)

Green asks the court to order the defendants to reinstate Cistrunk to his visitor list. Dkt. No. 2. But his request is not a motion for an injunction; it instead is a proposed order granting the injunction. Id. Green also filed a "supporting affidavit" and a "memorandum of law in support" of his injunction Id.; Dkt. Nos. 3, 4. The declaration reiterates facts from the original complaint and contests the conduct report of which Green was found guilty in January 2019. Dkt. No. 4. The memorandum of law consists of one paragraph. Dkt. No. 3. It provides a one-sentence introduction and states, "Retaliatory motive maybe [sic] inferred from the chronology of events." Id. (citing Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988); and Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987)).

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). A preliminary injunction is not appropriate to guard against the "mere possibility of irreparable injury." Orr v. Shicker, 953 F.3d 490, 501 (7th Cir. 2020) (citing Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008)). If the plaintiff can establish those three factors, the court must balance the harm to each party and to the public interest from granting or denying the injunction. See Wood, 496 F.3d at 622; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

Green has not satisfied the criteria for a preliminary injunction. The legal proposition in Green's memorandum about retaliatory motive is correct. But that proposition alone does not show that he is likely to succeed on the merits of his case. On the contrary, the court is dismissing the amended complaint because it fails to state a claim. That means he will not succeed on the merits. Even if he had some likelihood of success on the merits, Green seeks the same injunctive relief through the preliminary injunction that he seeks through his lawsuit—restoration of Cistrunk to his visitor list. He does not explain why only a preliminary injunction would provide adequate relief. Nor has Green established that he will suffer irreparable harm if the court does not grant his request for a preliminary injunction. It may be disappointing for Green not to have visits from Cistrunk, but that is not the kind of harm a preliminary

injunction is meant to remedy or prevent. The court will deny Green's motion for a preliminary injunction.

## III. Conclusion

The court **DENIES** Green's motion for a preliminary injunction. Dkt. No. 2.

The court **ORDERS** that this case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the amended complaint fails to state a claim. The court concludes that further amendment would be futile and **ORDERS** that the plaintiffs may not file a second amended complaint. The court will enter judgment accordingly.

The court will document that Green has incurred a "strike" under 28 U.S.C. §1915(g).

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within thirty days of the entry of judgment. <u>See</u> Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the thirty-day deadline. <u>See</u> Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within twenty-eight days of the entry of judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 4th day of March, 2022.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**